**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

STATE FARM MUTUAL AUTOMOBILE *
INSURANCE COMPANY         *
        *
    Plaintiffs,         *
        *
    v.         *     Case: 1:08-cv-01081
        *     Assigned To : Sullivan, Emmet G.
ALLIED HEALTHCARE         *     Assign. Date : 6/23/2008
PRACTITIONERS, et al.         *     Description: General Civil
        *     JURY TRIAL DEMANDED
    Defendants.         *
        *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MOTION TO DISMISS

Comes Now, the DEFENDANTS ALLIED HEALTH CARE PRACTITIONERS

AND RICHARD WILLIAM ALBERT, M.D., by and through the undersigned counsel,

and moves this Honorable Court, pursuant to Fed. R. Civ. P. 12(b) and 28 U.S.C. 1332, to

dismiss for lack of subject matter jurisdiction.

WHEREFORE, Defendants pray that the instant motion is granted and Court:

a. Dismiss this action;

b. Award Defendants costs of defending this action;

c. All other relief as this Court finds just and necessary.

Respectfully submitted,

Kenneth H. Rosenau, U.S.D.C. #342733
Rosenau & Rosenau
1304 Rhode Island Ave., NW
Washington, DC 20005
(202) 387-8680
*Attorney for Defendants*
*Allied Health Care Practitioners and*
*Richard William Albert, M.D.*

1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of September 2008, a copy of the

foregoing Motion to Dismiss was mailed, first class, postage prepaid, to:

Laura Basem Jacobs, Esquire
7315 Wisconsin Avenue, NW, Ste. 500W
Bethesda, MD  20814

Kenneth H. Rosenau

2

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

STATE FARM MUTUAL AUTOMOBILE  \*
INSURANCE COMPANY  \*
        \*
    Plaintiffs,  \*
        \*
    v.  \*    Case: 1:08-cv-01081
        \*    Assigned To : Sullivan, Emmet G.
ALLIED HEALTHCARE  \*    Assign. Date : 6/23/2008
PRACTITIONERS, et al.  \*    Description: General Civil
        \*    JURY TRIAL DEMANDED
    Defendants.  \*
        \*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

COMES NOW Defendants, ALLIED HEALTH CARE PRACTITIONERS AND

RICHARD WILLIAM ALBERT, M.D., by and through the undersigned counsel, and

hereby submits this Memorandum of Points and Authorities in support of their Motion to

Dismiss:

1. Plaintiffs allege to have personal jurisdiction over Defendants by virtue of

diversity jurisdiction pursuant to 28 U.S.C. 1332. (See Paragraph 4 of the Complaint for

Monetary Damages and Declaratory Relief.) In support of their jurisdictional claim,

Plaintiffs state that the parties are citizens of diverse jurisdictions, namely: Defendants

are citizens of the District of Columbia and Plaintiffs are citizens of Bloomington, IL, by

virtue of their principal place of business.

2. For a U.S. District Court to have subject jurisdiction over a matter that is not a

federal question, it must have diversity jurisdiction under 28 U.S.C. 1332. More

specifically, 28 U.S.C. 1332 requires the following to obtain diversity jurisdiction over a

matter:

3

"(a) The district courts shall have original jurisdiction of all civil actions
where the matter in controversy exceeds the sum or value of $ 75,000,
exclusive of interest and costs, and is between--
   (1) Citizens of different States;
   (2) citizens of a State and citizens or subjects of a foreign state;
   (3) citizens of different States and in which citizens or subjects of a
foreign state are additional parties; and
   (4) a foreign state, defined in section 1603(a) of this title [28 USCS §
1603(a)], as plaintiff and citizens of a State or of different States."

3.  Plaintiffs admit they are "licensed to engage in the writing of automobile

insurance policies in the District of Columbia.": (See Paragraph 1 of the Complaint.)

Consequently, Plaintiffs conduct business and have operations in the District of Columbia

and can easily construed as citizens of the District of Columbia as Defendants. As such,

the parties in this matter are not citizens of different states and the Court lacks subject

matter jurisdiction.

4.  In addition, Plaintiffs allege the amount in controversy, exclusive of interest and

cost is "over 75,000." (See Paragraphs 4 and 122 of the Complaint.) However, based on

the facts alleged in Plaintiff's complaint, this contention is doubtful. For instance,

Paragraph 8, of Plaintiff's Complaint states:

"…Plaintiffs have received approximately $425,218.00 in bills from
Defendants, which bills have been submitted under the names of Allied
and Neurodiagnostics. Pursuant to these bill, Plaintiffs State Farm have
made payments in first and third party claims of over approximately
$248,417.60.

Based on the language above, Plaintiffs admit they only paid a part of the $248,417.60 to

Defendants. Indeed, Plaintiffs' Complaint fails to state how much Plaintiffs' actually

paid to Defendants, as Plaintiffs admit the claims were paid to both Defendants and third

parties. Plaintiffs fail to state how much they paid Defendants. Plaintiffs' allegations

that 100% of the amount paid to Defendants was based on fraud is also dubious, as the

4

facts alleged in the Complaint do not support this.  Consequently, Plaintiffs fail to satisfy the requirements for diversity jurisdiction in 28 U.S.C. 1332, as it is unclear whether the amount in controversy exclusive of costs and interest exceeds $75,000.

Based on the lack of diversity jurisdiction, Defendants contend this Court does not have subject matter jurisdiction and Plaintiff's Complaint for Monetary Damages and Declaratory Relief must be dismissed.

WHEREFORE, for the foregoing reasons, Defendants' Motion to Dismiss be granted and that the Court Order the following relief:

a.  Dismiss this action based on the lack of subject matter jurisdiction; and,

b.  Grant all other relief as this Court finds just and necessary;

c.  Alternatively, Defendants' request that their Answer, Counter-Complaint and Jury Demand, attached as Defendant's Exhibit No. 1 be filed forthwith.

Respectfully submitted,

Kenneth H. Rosenau, U.S.D.C. #342733
Rosenau & Rosenau
1304 Rhode Island Ave., NW
Washington, DC 20005
(202) 387-8680
*Counsel for Defendants Allied Health Care*
*Practitioners and*
*Richard William Albert, M.D.*

5

## THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

STATE FARM MUTUAL AUTOMOBILE    *
INSURANCE COMPANY    *
        *
    Plaintiffs,     *
        *
    v.       *    Case: 1:08-cv-01081
        *    Assigned To : Sullivan, Emmet G.
ALLIED HEALTHCARE    *    Assign. Date : 6/23/2008
PRACTITIONERS, et al.    *    Description: General Civil
        *    JURY TRIAL DEMANDED
    Defendants.    *
        *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

### ORDER

Upon consideration of the Defendants' Motion Dismiss, Plaintiff's Opposition (if

any), and the record herein, it is this _____ day of

_____, 2008,

_____ Defendants' Motion to Dismiss is hereby **GRANTED**; and it is further,

**ORDERED**, that this matter is dismissed based on lack of subject matter

jurisdiction pursuant to 28 U.S.C. 1332;

**OR,**

_____ Defendant's Motion is hereby **DENIED**; and it is further,

**ORDERED**, that Defendants' Answer, Counter-Complaint and Jury Demand be

filed herewith.

**SO ORDERED.**

_____
The Honorable
U.S. District Court for the District of Columbia

Kenneth H. Rosenau, Esquire
1304 Rhode Island Ave., NW
Washington, DC 20005

Laura Basem Jacobs, Esquire
7315 Wisconsin Avenue, NW, Ste. 500W
Bethesda, MD  20814

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

EXHIBIT

STATE FARM MUTUAL AUTOMOBILE *
INSURANCE COMPANY *
                                       *

       Plaintiffs/Counter-Defendants. *

       v.                            *     Case: 1:08-cv-01081
                                      *     Assigned To : Sullivan, Emmet G.
ALLIED HEALTHCARE              *     Assign. Date : 6/23/2008
PRACTITIONERS, et al.            *     Description: General Civil
                                      *     JURY TRIAL DEMANDED
       Defendants/Counter-Plaintiffs. *

*    *    *    *    *    *    *    *    *    *    *    *    *

**ANSWER, COUNTER-COMPLAINT AND JURY DEMAND**

      Defendants Allied Practitioners and Richard William Albert, MD, by and through

the undersigned counsel, file the instant Answer and Counter-Complaint in response to

Plaintiffs' Complaint for Monetary Damages and Injunctive Relief, stating as follows:

**THE PARTIES**

1. Defendants lack sufficient information to admit or deny the allegations set forth in
    Paragraph 1 of the Complaint.

2. Defendants admit the allegations in Paragraph 2 to the extent that Richard
    William Albert is resident and licensed to practice medicine in the District of
    Columbia; the remainder of Plaintiff's allegations in Paragraph 2 are denied.

3. Denied.

**VENUE AND JURISDICTION**

4. The statutory provisions set forth in Paragraph 4 of the Complaint are
    acknowledged. Whether the court has jurisdiction based on the diverse

citizenship of the parties and amount of controversy exceeding $75,000, exclusive

of interest and costs is denied thereon pending strict proof. Given the laundry list

approach of plaintiffs and their view that 100% of all treatment by Dr. Albert

and/or his staff is involved, we specifically reserve the issue of Maryland patients

with Maryland law suits.

5. The statutory provisions set forth in Paragraph 5 of the Complaint are

acknowledged. Proper venue, as alleged in Paragraph 5, is denied thereon

pending strict proof.

**FACTS**

6. Paragraph 6 is admitted to the extent that State Farm is bringing the Complaint;

denied as to the remaining allegations.

7. Defendants do not have enough information to either admit or deny the

allegations in Paragraph 7.

8. Defendants do not have enough information to either admit or deny the

allegations in Paragraph 8.

9. Denied.

10. Denied.

11. Denied.

12. Denied.

13. Denied.

14. Denied.

**PATIENTS**

15. Denied.

16. Denied.

17. Denied.

18. Denied.

19. Denied.

20. Denied.

21. Denied.

22. Denied.

23. Denied.

24. Denied.

25. Denied.

26. Denied.

27. Denied.

28. Denied.

29. Denied.

30. Denied.

31. Denied.

32. Denied.

33. Denied.

34. Denied.

35. Denied.

36. Denied.

37. Denied.

38. Denied.

39. Denied.

40. Denied.

41. Denied.

42. Denied.

43. Denied.

44. Denied.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Denied.

64. Denied.

65. Denied.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

74. Denied.

75. Denied.

76. Denied.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

81. Denied.

82. Denied.

83. Denied.

84. Denied.

85. Denied.

86. Denied.

87. Denied.

88. Denied.

89. Denied.

90. Denied.

91. Denied.

92. Denied.

93. Denied.

94. Denied.

95. Denied.

96. Denied.

## E. **FRADULENT SCHEMES**

### Billing for Treatment Which Was Not Rendered

97. Denied.

98. Denied.

99. Denied.

### Treatment Was Rendered by Someone Not Authorized
### To Administer the Treatment

100.    Denied.

101.    Denied.

102.    Denied.

103.    Denied.

104.    Denied.

105.   Denied. Dr. Albert notes in this regard that his principal assistants were orthopedic technicians, and not physical therapists. There is no licensing requirement in the District of Columbia for an orthopedic technician. It is not physical therapy to hold an ice pack on a back, or a massage unit, or a heat pack. It is medical treatment that can be billed for, as prescribed by the doctor and administered by the technician. Dr. Albert notes in this regard he purchased the practice with this paradigm running, and it is common to all such medical practices in DC specializing in the treatment of personal injuries.

<u>Neurodiagnoistic Testing</u>

106.   Denied.

107.   Denied.

108.   Denied.

109.   Denied.

110.   Denied.

111.   Denied.

112.   Denied.

113.   Denied. The complaint fails to understand the nature of pain diagnosis and treatment. It is sometimes muscular in origin and sometimes neurological in origin. Testing to determine which is sometimes required, but not always. The paradigm created by Dr. Albert was specifically tailored to comply with Federal regulations on point (commonly called the Stark Amendments) which pre-empt state law. The complaint seeks to enforce state law when it is pre empted by Federal law.

7

## COUNT I
### VIOLATIONS OF D.C. INSURANCE FRAUD STATUTE § 22-3225.01, *et seq.*

114.    Defendants reassert the responses set forth in previous paragraphs as if fully

set forth herein.

115.    The statutory provisions set forth in Paragraph 115 are acknowledged.

Whether Defendants have violated said provisions is denied thereon pending strict

proof.

116.    Denied.

117.    Denied.

118.    Denied.

119.    Denied.

120.    Denied.

121.    Denied.

122.    Denied.

## COUNT II
### REQUEST FOR DECLARATORY RELIEF

123.    Defendants reassert the responses set forth in previous paragraphs as if fully

set forth herein.

124.    Paragraph 124 of the Complaint is admitted; to the extent it applies to the

Defendants' actions or omissions, Paragraph 124 is denied.

125.    Denied.

126.    Denied.

8

WHEREFORE, Defendants Allied Health Care Practitioners and Richard William Albert, M.D., having responded to the allegations set forth in Plaintiffs' Complaint for Monetary Damages and Declaratory Relief request that the Court dismiss the Complaint for Monetary Damages and Declaratory Relief and award to these Defendants such other and further relief as the nature of this case requires.

## **AFFIRMATIVE DEFENSES**

### FIRST AFFIRMATIVE DEFENSE

The Complaint for Monetary Damages and Declaratory Relief fails to state a cause of action upon which relief may be granted. Specifically to the extent it seeks actions under DC law which were in fact mandated by compliance with Federal law on point they are pre empted and barred.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred or diminished by their own sole or contributory negligence for which their negligence was the proximate cause of all or part of their own damages.  To the extent Plaintiffs had a duty to review bills item-by-item and patient-by-patient as they arose, they were negligent in their performance of their duties to timely review claims.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' failed to take due and appropriate care in the mitigation of their alleged damages; their recovery is therefore barred in whole or in part.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' alleged damages were proximately caused by act(s) of commission or omission of other defendants and/or third parties over which Defendants exercised no control or right to control.

## FIFTH AFFIRMATIVE DEFENSE

Some or all of the Plaintiffs' claimed damages are attributable to the intervening and/or superceding acts of negligence, breaches and/or other wrongdoings of others. Defendant is not a guarantor of the actions of plaintiffs' bar tort attorneys and is not responsible for a patient who comes in coached about what to complain about or who has discussed his case with counsel before approaching a doctor. Defendants are not the judge or jury and is not tasked with cross-examining the patient on whether treatment was needed or not, or exaggerated or not. That is the role of Plaintiffs' attorneys when they defend a tort law suit. To the extent Plaintiffs seek to shift that burden, it is inappropriate and wrong.

## SIXTH AFFIRMATIVE DEFENSE

That Plaintiffs' recovery of all or part of their alleged damages is barred by the applicable statute of limitations, statute of frauds, unclean hands and/or laches.

## SEVENTH AFFIRMATIVE DEFENSE

That Plaintiffs' alleged damages are not causally related to the events alleged in the Complaint.

## EIGHTH AFFIRMATIVE DEFENSE

Defendants further plead the defenses of lack of standing, not real party in interest, arbitration, accord and satisfaction, collateral estoppel, equitable estoppel, estoppel, adverse possession, release, misrepresentation, unclean hands, repudiation, payment, *res judicata*, misjoinder, nonjoinder, forfeiture, waiver, good faith, breach of contract, reasonable justification, reasonable reliance, economic loss rule and privilege.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs assumed the risk of their damages, thus barring any recovery from Defendants.

## TENTH AFFIRMATIVE DEFENSE

Defendants deny that Plaintiffs were damaged in the manner and to the extent alleged in their Complaint.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs failed to comply with requisite statutory requirements.

## TWELVTH AFFIRMATIVE DEFNSE

Any allegation that is not specifically admitted is hereby denied.

## THIRTEENTH AFFIRMATIVE DEFENSE

Defendants Allied and Albert reserve their right to assert other affirmative defenses and/or to amend their Answer as discovery in this case discloses a basis therefore. Specifically, Plaintiffs have failed to pled fraud with particularity. It is not particular enough to claim that 100% of all treatment rendered by Defendants is fraudulent.

11

WHEREFORE, Defendants Allied and Albert request that the Court enter judgment in their favor, that Plaintiffs' Complaint for Monetary Damages and Declaratory Relief against them be dismissed with prejudice, and that the Defendants recover from Plaintiffs the costs of defending this action and such other and further relief as the Court deems just, necessary and proper.

## VERIFICATION

I RICHARD WILLIAM ALBERT, M.D. hereby aver under penalties of perjury that the factual averments in the foregoing Answer to Plaintiffs' Complaint for Monetary Damages and Declaratory Relief are true to the best of my knowledge, information and belief.

_____

Richard William Albert, M.D.

Respectfully Submitted,

_____

Kenneth H. Rosenau, U.S.D.C. #342733
Rosenau & Rosenau
1304 Rhode Island Avenue, NW
Washington, D.C.  20005
202-387-8680
202-387-8682 (fax)

12

### THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY | * * * |
| Plaintiffs/Counter-Defendants. | * * |
| v. | * * |
| ALLIED HEALTHCARE PRACTITIONERS, et al. | * * * * |
| Defendants/Counter-Plaintiffs. | * * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

Case: 1:08-cv-01081
Assigned To : Sullivan, Emmet G.
Assign. Date : 6/23/2008
Description: General Civil
JURY TRIAL DEMANDED

### COUNTERCLAIM

COMES NOW the Defendants/Counter-Plaintiffs (hereinafter referred to as "Plaintiffs") Allied Health Care Practitioners and Richard William Albert, by and through the undersigned counsel, and hereby request the following relief from the Court:

### PARTIES

1.    Defendants/Counter-Plaintiffs (hereinafter "Plaintiffs") are citizens and residents of the District of Columbia.

2.    Plaintiff Richard William Albert (hereinafter referred to as "Albert") is a physician licensed to practice medicine in the District of Columbia and specializes in the treatment of patients suffering from personal injuries sustained in automobile collisions and similar conditions.

3.    Plaintiff Albert is also the principal, owner and manager of Plaintiff Allied Health Care Practitioners (hereinafter referred to as "Allied"), which is organized as a sole proprietorship under the laws of the District of Columbia.

13

## JURISDICTION

4.    Jurisdiction is based on both federal code and DC Code that all parties reside in D.C. and the Defendants' business is located in D.C.

5.    Personal jurisdiction is proper as Defendants submitted to the Court's jurisdiction by filing of their Complaint for Monetary Damages and Declaratory Relief.

6.    Venue is proper in this District as Defendants transact business and is found in the District of Columbia.

## STATEMENT OF FACTS

7.    This Counter-Complaint is brought by Richard William Albert, M.D. both individually and as Principal of Allied Health Care Practitioners, a medical practice specializing in the care of patients suffering from personal injuries, against Plaintiff/Counter-Defendants State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (hereinafter collectively referred to as "Defendants" and "State Farm").

8.    The time relevant to this action is from 2002 to present.  During this time, Plaintiffs purchased a medical practice from a prior physician, focused on the treatment of patients suffering from personal injuries stemming from either automobile collisions and/or from work-related injuries.  Plaintiffs continued to develop this practice, which rendered treatment to include physical therapy, heat therapy, G-4 therapy, exercise, and massage.

9.    All treatment rendered by Plaintiffs was overseen by Albert, a licensed physician.

10.    All of Plaintiffs' billing was personally conducted by Albert.

14

11.    Plaintiffs employed physical therapists and other professionals who rendered treatment to patients appropriate to their credentials and District of Columbia law.

12.    Plaintiffs also employed two orthopedic technicians, who assisted Albert in administrative tasks of the practice to include scheduling appointments, answering phones, filing, and performing other tasks akin to medical assistants, such as applying icepacks or heating pads; they did not provide therapy.

13.    Plaintiffs received compensation for their services either by patients' self pay or by charging patients for services and securing physician liens on the patients' claims or law suits. However, the majority of Plaintiffs' income come from patients' claim on insureds. Plaintiffs' liens were executed by both their patient and their attorneys and encompass a standard component of personal injury law, which are provided for in the ethical rules of the D.C. Bar and the bar of this Court. Typically, Plaintiffs' patient's claims were covered by auto or liability insurance or worker's compensation insurance maintained by the liable insured parties. Such arrangements permit Plaintiffs to treat the poor as well as the rich.

14.    Defendant State Farm is one of several insurance companies to which Plaintiffs' patients submitted claims, or with whom they were involved in litigation. However, Defendant State Farm is the only entity that has brought suit against Plaintiffs.

15.    On or about 2007, Albert learned from several patients' attorneys that Defendant State Farm launched an "investigation" aimed specifically at Plaintiffs' patients. Albert also learned that State Farm had led other insurance companies to launch similar investigations. Although, Albert attempted to communicate with Defendant both

individually and through counsel concerning the underlying reasons for said investigation, State Farm repeatedly refused to reveal their concerns.

16.    On or about March 2007, Defendant State Farm made disparaging and untrue statements concerning Plaintiffs to patients, their attorneys and referring medical providers, much of which is realleged in Defendants' Complaint for Monetary Damages and Declaratory Relief and include but are not limited to:

- Plaintiff Albert is not a *bona fide* physician
- Plaintiff Albert has had his medical license in two jurisdictions other than the District of Columbia removed for cause
- Plaintiffs diagnosed and treated false injuries
- Plaintiffs billed for services not rendered
- Plaintiffs rendered treatment by individuals to include its orthopeadic technicians who are not qualified, credentialled or licensed to provide therapy or treatment
- Plaintiffs rendered unnecessary or inappropriate treatment or care in an effort to maximize their compensation
- Plaintiff Albert billed fraudulently for services

15.    In 2007, Allied through the undersigned counsel, sent written correspondence to State Farm's legal counsel, demanding that State Farm cease and desist its defamation of Plaintiffs. Despite this communication, State Farm and its counsel continue to make disparaging statements either for which they know is false or for which there is no good faith basis.

16.     Defendants' undiscerning "investigation" of all of Allied's bills delayed timely resolution and settlement of countless claims, forcing many patients and their attorneys into unnecessary and expensive lawsuits to simply cover their expenses.

17.     State Farm's "investigation" forced patients and their counsel to negotiate deep reductions in Allied's bills which Albert felt compelled to accept to retain goodwill.  In many cases after accepting such reductions, Allied was unable to recoup the costs of rendering treatment much less compensation for their own professional services.  State Farm deliberately interfered against Plaintiffs' liens on patients' settlement proceeds.

18.     On several occasions, State Farm negotiated settlements directly with Allied's patients' attorneys with the understanding that no part of the proceeds be payable to Allied.  State Farm's directive was therefore an intentional interference with Allied's physician liens.  State Farm's directive also encouraged patients' counsel to violate rules of professional conduct by disbursing funds from settlements and/or judgments to themselves and their clients prior to satisfying Plaintiffs' physician liens.

19.     On at least three occasions, Defendants cut checks directly payable to Allied for professional services rendered to at least two patients and with the intent to defaud Allid subsequently ordered stop payments.  Although Plaintiffs made inquiries as to the reason for the stop payments, Defendants failed to offer Plaintiff any explanation in violation of D.C. Code § 28-3152.

20.     State Farm's actions against Dr. Albert and Allied have led other insurance companies to launch investigations thereby delaying settlement of all Allied's patients' claims.  State Farm's actions have directly and proximately forced Dr. Albert into an early retirement, as his practice is no longer economically viable.

17

21.     Plaintiffs have suffered actual damages from Defendants' deliberate conduct, which form a pattern of conduct designed to force Plaintiffs out of business and thereby reducing Defendants' liability for care rendered to injured patients.

## COUNT ONE
## TORTIOUS INTERFERENCE

22.     Plaintiffs incorporate and restate the allegations in Paragraphs one through twenty-two above.

23.     State Farm's conduct as alleged herein give rise to common law liability for intentional interference with contractual relations and with prospective economic advantage and/or prospective contractual or business relations.

24.     At all relevant times, Allied and Albert had valid contractual relationships or legitimate expectations of legally enforceable contractual or economic relationships with third parties, namely their patients and their counsel.

25.     The foregoing relationships would have provided economic and other benefits to Allied and Albert but for State Farm's tortuous conduct.

26.     At all relevant times, State Farm knew of Allied's and Albert's valid and legally enforceable contractual and prospective contractual relationships and economic relationships with patients and their counsel.

27.     State Farm willfully engaged in the foregoing acts and practices with the intent to induce breach or disruption of Allied's and Albert's existing and prospective contractual and economic relationships with third parties.

18

28.     State Farms' deliberate and primary purpose in some, if not all of the foregoing

acts and practices was to disrupt Plaintiffs' prospective contractual and economic

relationships with third parties.

29.     The foregoing acts and practices, and State Farm's continuing course of

defamation and otherwise tortuous conduct deliberately and directly resulted in actual

breaches or disruptions of Plaintiffs' existing or and prospective contractual and business

relations with third parties.

30.     The foregoing acts and practices, and the continuing course of State Farm's

tortuous conduct directly and proximately caused Plaintiffs to suffer injury and damages

to its business and property, as set forth above.

31.     State Farm committed these tortuous acts with deliberate and actual malice,

ill-will and specific knowledge that its actions constituted an outrageous, willful and

wanton disregard of Allied and Albert's legal rights.


## COUNT TWO
### MERCHANT'S RECOVERY OF DISHONOREDCHECK, AND FOR COLLECTION OF A DEBT

32.     Plaintiffs incorporate and restate the allegations in Paragraphs one through thirty-

one above.

33.     State Farm wrote checks on at least two occasions to Allied for the purpose of

compensating them for treatment rendered to injured claimants on their insurance

policies.  State Farm subsequently stopped payment on the same checks with the

intention to defraud Defendants.

19

34.     To date, State Farm has failed to provide any explanation for why stop payment
was issued on these checks.

35.     Despite demand by Dr. Albert for payment Defendants State Farm have refused to
do so.

36.     Allied and Albert suffered actual and resulting damages from State Farm's stop
payment.

37.     Allied and Albert are entitled to double the face value of State Farm's dishonored
checks, reasonable attorney's fees and costs of this action pursuant to

D.C. Code § 28-3152.


## COUNT THREE
## DEFAMATION


38.     Plaintiffs incorporate and restate the allegations in Paragraphs one through
thirty-seven above.

39.     State Farm and their legal counsel made false statements to Allied' patients,
Allied's patients' counsel, referring medical providers, and other insurance companies in
which Allied patients were claimants about Allied and Albert.  State Farm made such
statements with the knowledge that they were false.

40.     The defamatory statements were neither protected nor privileged.

41.     Because State Farm published or caused to be published statements maligning
Allied and Albert's character and reputation to include allegations they committed fraud,
State Farm's statements are defamatory per se, as a matter of law, thereby entitling
Plaintiffs to recover presumed damages.

42.    State Farm published or caused to be published defamatory statements with actual malice, that is, with knowledge that the statements were false, or with reckless disregard as to the truth or falsity of the statements.

43.    State Farm's conduct was so malicious and egregious as to warrant punitive damages.  State Farm's actions were particularly reckless as and malicious because their counsel was put on notice that the statements were false in the March 2007 cease in desist communication from the undersigned.  Nonetheless, State Farm continued to publish and republish these statements.

44.    As a direct and proximate result of State Farm's intentional defamation, Plaintiffs have suffered, continue to suffer, and will continue to suffer loss of income, damage to their personal and professional reputations, mental anguish, humiliation and damage to their business to include Albert's early retirement.

WHEREFORE, for all the foregoing reasons, Plaintiffs Allied and Albert respectfully request that the Court enter a judgment in their favor and against State Farm in the amount of $5,000,000 to compensate them for actual and resulting damages and for the following relief:

A.  Punitive Damages

B.  Double the face value of State Farm's dishonored checks to Allied and Albert per D.C. Code 28-3152;

C.  Pre-judgment interest to the extent permitted by law,

D.  Costs of this action;

E.  Reasonable attorney's fees; and

F.  Such other relief as the Court may deem just and appropriate.

21

Dated this 4th day of September, 2008.

## VERIFICATION

I RICHARD WILLIAM ALBERT, M.D. hereby aver under penalties of perjury

that the factual averments in the foregoing Counterclaim are true to the best of my

knowledge, information and belief.

_____
Richard William Albert, M.D.

Respectfully Submitted,

_____
Kenneth H. Rosenau, U.S.D.C. #342733
Rosenau & Rosenau
1304 Rhode Island Ave. NW
Washington, DC 20005
202 387-8680
202 387-8682

## JURY DEMAND

Counter-Plaintiffs Richard William Albert and Allied Health Care Practitioners

elect a trial by jury the aforementioned matter.

_____
Richard William Albert, M.D.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a true and correct copy of the foregoing Defendants' Answer and Counterclaim on this 5th day of September, 2008 to:

    Laura Basem Jacobs, Esquire
    7315 Wisconsin Avenue, NW, Ste. 500W
    Bethesda, MD  20814

                        Kenneth H. Rosenau

# ROSENAU & ROSENAU

ATTORNEYS AT LAW

1304 RHODE ISLAND AVENUE, N.W.

DISTRICT OF COLUMBIA

20005

KENNETH H. ROSENAU (DC, MD, VA)

SUSAN H. ROSENAU (DC, MD, VA)

(202) 387-8680

FAX (202) 387-8682

email@rosenaulaw.com

October 15, 2007

Laura B. Jacobs, Esquire
Budow & Noble
7201 Wisconsin Avenue
Suite 500 W
Bethesda MD 20814-4849

Dear Ms. Jacobs:

This letter serves as a cease and desist communication regarding your conduct and that of your client as it relates to Richard Albert, MD and Allied Healthcare Practitioners ("Allied").

Your inappropriate, and possibly illegal, conduct includes the following:

1) Alleging that Allied Healthcare Practitioners is illegally employing unlicensed orthopaedic technicians;

2) Communicating the above allegations of illegal activities to other insurance companies;

3) Delaying and/or reducing payments to claimants who have been treated by Allied;

4) Making false representations to claimants that Allied has failed to cooperate with State Farm's claims investigators, such as failing to produce documents. (See, e.g., attached October 3, 2007 letter from Black to Montague, claimant.)

You are misguided as to the law regarding the licensure of orthopedic technicians. The District of Columbia does not require licensure for orthopedic technicians. In fact, the D.C. Health Professional Licensing Administration made a decision in the last two months that "orthopaedic technicians" are not required to be licensed. As you may be aware, two orthopaedic technicians assist Dr. Albert and physical therapists at Allied in caring for his patients. Their tasks include the placing of hot and/or cold packs in specific regions of the neck and back, the fitting of orthotics, including back braces and neck collars and the instructing of patients in pre and post-operative care. Such tasks are also consistent with the Standards of Practice and Job Description published by National

1

Association of Orthopaedic Technologists for "Clinic/Office Technologists," which are available at www.naot.org/standardspractice.html.

Although many tasks can be completed by an orthopedic technician, they must be performed under the supervision of a licensed physician or physical therapist. Historically, the definition of supervision has been broad and has included scenarios where surgeons have "supervised" simultaneous surgeries often being done in rooms far away from where the surgeon is located. A supervising doctor need not be in the same room—an economic impossibility not called for in the regulations--where the treatment is taking place. Therefore, your allegations, both implicit and explicit, that Allied Healthcare Practitioners are engaging in fraud by employing non-licensed employees, are patently false.

We fully understand insurance companies make their money by paying as little as possible and as slowly as possible. However, in an effort to "investigate" our client, however and to involve other insurance companies, including Nationwide and perhaps GEICO, we believe you have engaged on a kind of fishing expedition that will run our client out of business.

Attached to this letter is an October 3, 2007 correspondence from Chad Black, Claims Examiner at State Farm, in which he writes:

> "We continue to have questions and concerns pertaining to the manner in which treatment was rendered, and the manner in which records and bills were prepared and maintained at Allied Healthcare Practitioners. Since these questions/concerns remain unresolved, we are unable to consider the $4120.00 in outstanding Allied Healthcare Practitioners' bill at this time."

We need not educate you as to libel, slander, defamation, nor tortious interference with a contract. These contacts, coupled with State Farm's apparent unwillingness to pay any claims in which the patient has been treated by Dr. Albert, creates a very troubling situation for our client.

For the moment, we will assume your steps were taken in good faith. We had to swallow hard to make that assumption given your discourtesies in the matter of the subpoenas issued against Allied's employees. However, in granting you the benefit of that doubt, we are now demanding that you cease your crusade against Dr. Albert, so that we can ameliorate the damage done thus far.

We reserve all rights as to the damages to Dr. Albert's business caused by the inference (or direct statement) by you regarding his business practices. We demand that you cease making defamatory statements and/or threats to claimants and their attorneys. You've already made it clear that any attorney or patient who uses Dr. Albert can look forward to increased hassles and the likelihood of their own insurance company not paying for his services despite their duty to act in good faith.

2

I leave it to you whether to notify your malpractice and liability carrier. Right now, however, my interest is to stop the hemorrhaging caused by you and your clients' ill-considered remarks and efforts.

Our client wishes to resolve these matters without litigation and to that end we can be reached at (202) 387-8680.

Sincerely,

Kenneth H. Rosenau, Esquire